# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| The Estate of Michael McConnell, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:18-cv-00355 |
| Plaintiff, | Judge Walter H. Rice |
| v. | |
| EUBA Corp., *et al.*, | |
| Defendants. | |

SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiff, the Estate of Michael McConnell ("Plaintiff"), individually and on behalf of all similarly-situated individuals identified in Section 1(B) below and, on the other hand, Defendants EUBA Corp., Steve DePugh, and David Sharpe (collectively "Defendants"). Defendants and Plaintiff will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

   A. On October 30, 2018, this lawsuit, now captioned *McConnell v. EUBA Corp.* (the "Lawsuit"), was filed, and is currently pending in the United States District Court, Southern District of Ohio (Western Division) (the "Court"), case number 3:18-cv-00355.

   B. The Parties seek to resolve all claims raised in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following settlement class:

   > All current and former delivery drivers employed from October 30, 2015 to October 2, 2020 at Defendants' Domino's stores owned, operated, and/or controlled by Defendants. These individuals are collectively referred to as "the Class" and individually as "Class Members."

"Defendants' Domino's stores" includes the following locations:

1. Store No. 2257 - 585 Royal Oak Dr., St. Marys, Ohio 45885.

2. Store No. 2258 - 114 E. Market St., Celina, Ohio 45822.

3. Store No. 2278 - 1105 Wapakoneta Ave., Sydney, Ohio 45365.

4. Store No. 2279 - 1756 S. Limestone St., Springfield, Ohio 45505.

5. Store No. 2336 - 509 S. Main St., Bellefontaine, Ohio 43311.

6. Store No. 2340 – 417 W. McCreight Ave., Springfield, Ohio 45503.

7. Store No. 2341 – 1045 Villa Rd., Springfield, Ohio 45503.

8. Store No. 2342 – 1554 E. Main St., Springfield, Ohio 45503.

9. Store No. 2343 – 937 W. Main St., Tipp City, Ohio 45371.

10. Store No. 2346 – 766 Scioto St., Urbana, Ohio 43078.

11. Store No. 2347 – 120 N. Sunset Dr., Piqua, Ohio 45356.

12. Store No. 2349 – 1450 N. Cole St., Lima, Ohio 450804.

13. Store No. 2387 – 2400 Cable Ct., Lima, Ohio 45805.

14. Store No. 2684 – 515 Wagner Ave., Greeneville, Ohio 45331.

The "Class Period" is from October 30, 2015 to October 2, 2020.

C. The purpose of this Agreement is to conclusively and finally resolve all of Plaintiff's and Class Members' claims against Defendants that were raised as part of the Lawsuit and occurred during the Class Period.

D. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void.

## 2. Opportunity to Negotiate, Consider, and Consult with Counsel

A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations included a private mediation with Stephen Watring on October 2, 2020.

B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not made, received, or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3. **Settlement and Disbursement**

A. To settle the Action, and in consideration of the release of claims and dismissal of the Action, Defendants agree to pay up to $850,000 (the "Settlement Fund"). The Settlement accounts for all payments and claims raised in the Lawsuit by Plaintiff and Class Members, including, but not limited to, those for all reimbursements, unpaid wages, liquidated damages, interest, attorneys' fees, expenses, claims administration fees, and service awards, up to and including the end of the Class Period.

B. As described below, the parties will retain a third-party claims administrator (the "Administrator") to administer settlement notice and payment, and the administration costs will come from the Settlement Fund. Defendants will provide necessary data, including miles driven and reimbursements paid for all Class Members to the Administrator and to Plaintiff's Counsel to calculate award amounts.

C. The Settlement will be divided in the following way:

    i. First, any amounts awarded for attorneys' fees, expenses, administration expenses, and service awards will be subtracted from the Settlement.

    ii. Second, the remaining portion of the Settlement Fund will be distributed as follows:

        a. Each Class Member's under-reimbursed expenses, for purposes of settlement, will be calculated at $.55 per mile driven during the Settlement Period, minus actual reimbursement payments they received from Defendants during the Settlement Period, based on Defendants' records; and

        b. Each Class Member's under-reimbursed expenses, for purposes of settlement, are multiplied by one to account for Ohio Constitution Article II, Section 34a damages, FLSA liquidated damages, and Ohio Prompt Pay Act damages; and

    c. Each Class Member's under-reimbursed expenses and additional damages, as calculated in Paragraphs (3)(C)(ii)(a) and (b) above, are added together to determine each Class Member's Maximum Possible Award; and

    d. To the extent the Class Members' Maximum Possible Award amounts together exceed the remaining portion of the Settlement Fund, the Class Members' award amounts will be reduced on a pro rata basis. Under absolutely no circumstances shall Defendants' payment obligations under this Agreement exceed the Total Settlement Amount of $850,00.00.

D. The Settlement will be disbursed as follows:

    i. Defendants will disburse 100% of the Settlement Amount to the Claims Administrator the later of 40 days after the Court enters an Order granting Final Approval of the Settlement Agreement or on August 2, 2021.

    ii. All amounts disbursed will be by check directed to each Class Member. To the extent that any portion of the check is deemed to be wages, Defendants will withhold any amounts normally withheld from the wages (i.e., for taxes). Defendants will also be responsible for paying any employer-side taxes that may result from these payments.

    iii. Checks may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days." At any point during the 180 days after the checks are initially issued, any Class Member may request that the Administrator reissue his or her check. The requesting Class Member may make their request by phone, email, U.S. mail, or through Class Counsel. The Administrator will then reissue the Class Member's check, which will be printed with release language, to him or her. To the extent any check is re-issued by the Claims Administrator, the check may be cashed or negotiated within 180 days of being re-issued.

    iv. If there are any unclaimed funds still held in trust after the process described in Paragraph (3)(D)(iii) is complete, those funds will redistributed to the Class Members on the same prorated basis as above with Class Members receiving no less than $10. To the extent that the remaining funds would result in Class Members receiving less than $10 each, the money will revert to Defendants.

E. Each check will be treated as expense reimbursement up to the IRS rate. For purposes of this settlement, the parties have agreed to a blended IRS rate of $.55 per mile. Any amounts paid above that will represent liquidated damages and will not be considered wages or

subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

F.  The Parties are responsible for ensuring their own proper tax treatment of the payments. In addition to the Settlement, Defendants will be responsible for their own portion of employer taxes (*e.g.*, FICA, FUTA, unemployment insurance), if any, arising from this Agreement. The Parties also agree and understand any payments under this Agreement are not intended to, will not form the basis for, nor shall they be considered wages for calculating, or re-calculating, additional contributions to, or benefits under, any benefit or compensation plans maintained by the Defendants for the benefit of their employees and their employees' beneficiaries. Class Members will be responsible for their individual payroll taxes, if any, that are normally withheld from their wages. Those amounts, if any, will be withheld by the Administrator or Defendants and remitted to the proper taxing authorities.

G.  Defendants will, from the Settlement, pay to Plaintiff $10,000 as a service award, subject to Court approval. This amount will come from the Settlement and will count toward the maximum amount of the Settlement. The service award will be payable by a separate check and will be considered as Form 1099 income.

H.  The Court shall retain continuing jurisdiction over the Settlement. In the event that Plaintiff, Class Counsel, and/or Class Members believe he/they must petition the Court to enforce, implement, or interpret this Agreement and/or if Defendants fail to make one or more payments as outlined above, Plaintiff and Class Members may notify Defendants of the issue. Defendants will then have 14 days to cure the failure or issue. If Defendants do not cure the failure or issue, Plaintiff, Class Counsel, and/or Class Members can request from the Court an entry of judgment against Defendants jointly and severally for the amount suffered as a result of the breach of the Settlement Agreement (including approved attorneys' fees) plus applicable interest. Further, in the event they prevail, Plaintiff, Class Counsel, and/or the Class Members will be entitled to recover reasonable attorneys' fees and costs associated with obtaining such a judgment and its enforcement.

I.  All payments set forth in this Section 3 are subject to Court approval of the Settlement (including responses to any objections or inquiries in response to the CAFA notice).

**4.  Attorneys' Fees and Expenses**

A.  Defendants agree not to object to an attorneys' fee award equal to or less than one-third of the Settlement ($283,333.33). In addition, Defendants agree not to object to Class Counsels' anticipated request for reimbursement of litigation expenses and administration expenses. This amount will be subtracted from the Settlement after any award for attorneys' fees.

B. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Class Counsel retain their right to appeal any decision by the Court regarding the attorneys' fees and costs and such appeal will not be deemed an appeal of this Agreement or the Settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for attorneys' fees and costs.

C. As noted above, the parties will retain a third-party Administrator to facilitate disbursement of the settlement notice, to facilitate the payments described above, to establish a Qualified Settlement Fund, and/or hold money in trust. The Claims Administrator's costs will be deducted from the Settlement Fund prior to calculation of the Class Members' awards, subject to Court approval.

## 5. Release

A. The term "Released Parties" includes Defendants and all related entities, along with all their predecessors, successors, parents, subsidiaries, franchisors including Domino's Pizza, Inc. (and its related entities), insurers, affiliates, owners, members, stockholders, officers, directors, employees, partners, shareholders, agents, legal representatives, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

B. Each Class Member who does not timely opt-out of the Settlement releases all wage and hour claims accrued from October 30, 2015 until October 2, 2020 relating to the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of delivery expenses, "dual jobs" claims, overtime claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the wage and hour laws of Ohio and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

C. Each Class Member who does not timely opt-out of the Settlement and cashes or otherwise negotiates his or her check releases all wage and hour claims accrued from October 30, 2015 until October 2, 2020 relating to the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of delivery expenses, "dual jobs" claims, overtime claims, and tip credit notice claims,

including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* the wage and hour laws of Ohio and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

E.  The back of each settlement check issued to Class Members will contain the following release:

> By cashing or negotiating this check, I agree to join the lawsuit *McConnell v. EUBA Corp., et al.*, No. 3:16-cv-00355 (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit relating to under-reimbursement of delivery expenses, "dual jobs" claims, overtime claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and under the federal Fair Labor Standards Act and parallel state and local wage and hour laws, including Ohio law.

## 6. Administration Procedure and Timeline

The Parties agree to the following timeline for the completion of the settlement process and dismissal of the Action:

A.  <u>Settlement Approval:</u> Plaintiff will draft and file a Motion for Preliminary Settlement Approval as soon as practicable.

B.  <u>Production of Class Data:</u> Within 14 days of the Court's preliminary approval, Defendants will transmit to Class Counsel the last known addresses, email addresses, phone number, social security number, mileage data, and reimbursement paid for each Class Member.

C.  <u>Notice:</u> Within 14 days of Defendants transmission of the above information, the Claims Administrator will transmit the Notice of Settlement (Ex. 1) to each Class Member by regular U.S. Mail and Electronic Mail (to the extent that email addresses are reasonably available). Upon reasonable request, Class Counsel may provide additional copies of the

Notices to a requesting Class Member in the format most convenient for the Class Member (*i.e.*, U.S. Mail, Email, Fax, etc.).

D. <u>Opt-out/Objection:</u> Each Class Member will have 60 days from the date the Administrator mails the above Notices in which to opt-out of the settlement or object to the settlement. This 60-day time period is the "Notice Period."

E. <u>Opting Out:</u> Any Class Member that wishes to exclude him or herself from this settlement may do so by submitting the request in writing within the Notice Period to Class Counsel. The request must include the following: (1) the Class Member's name, (2) the Class Member's signature, (3) the date signed, (4) a statement to the effect of "I wish to opt out of the settlement in *McConnell v. EUBA Corp., et al.*," and (5) a statement to the effect of "I understand that by opting out, I will receive no benefits from this settlement." Any Class Member who does not timely opt-out of the Settlement shall release claims as set forth above in Section 5.

F. <u>Objecting:</u> Any Class Member that wishes to object to the settlement may file their objection, along with any supporting briefs and supporting documents, with the Clerk of Court within the Notice Period. The objection must include a written statement (1) objecting to the settlement, (2) setting forth the objection's grounds, (3) setting forth the specific reasons for the objection, including any legal or evidentiary support for the objection, (4) stating whether the Class Member intends to appear and object to the settlement at the Final Approval Hearing, and (5) containing the Class Member's name, address, and telephone number. The Class Member must sign and date the objection. The objection must include documents sufficient to prove the objector's membership in the Class, such as proof of employment. Class Members who intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. The Class Member must send a copy of all of these items to Class Counsel, the Administrator, and Defendants' Counsel. Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed settlement.

G. <u>Motion for Final Approval:</u> Within 45 days of the close of the Notice Period, Plaintiff will draft and file a Motion for Final Settlement Approval.

H. <u>Payment Calculation:</u> Within 14 days after the end of the Notice and Objection Period, the Administrator will calculate amounts due to Class Members under the Agreement in light of the Court's Order on fees, expenses, and other amounts to be deducted from the Settlement and provide this calculation to Class Counsel and Defendants' Counsel. Class Counsel and/or Defendants' Counsel will promptly provide the Administrator with any corrections or changes to those calculations.

I.  Payment:  Defendants will make the entire payment payment described above the later of 40 days after final approval or August 2, 2020.

J.  Envelopes containing a settlement check will be marked on its face with the words "EUBA Corp. d/b/a Domino's Delivery Driver Settlement."

K.  Stipulation of Dismissal with Prejudice: Within 30 days of Defendants and/or the Administrator making the above payments, the Parties will submit a stipulation of dismissal with prejudice, without costs or fees. Notwithstanding the foregoing, the Court shall retain continuing jurisdiction over the Settlement.

L.  Undeliverable Class Member Checks: If any checks are returned to the Administrator as undeliverable with a forwarding address, the Administrator will forward the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, the Administrator will attempt to use any reasonable means to obtain an updated address for the Class Member, such efforts including (but not necessarily limited to) running the Class Member's information through a skip-tracing, Change of Address, or other database, and contacting the Class Member to obtain an updated address. If the Administrator is able to obtain an updated address, the Administrator will forward the payment to the updated address.

**7.  Communication, Defendants' Option to Revoke, and Non-Approval**

A.  If 10% or more of the Class Members opt-out of this settlement, Defendants have the right to revoke the Agreement. If Defendants exercise this option, the Agreement will be rendered null and void.

B.  Defendants will not (1) encourage Class Members to opt-out or (2) contact any of the Class Members regarding the terms of this Settlement and/or a Class Member's participation in the Settlement. If any inquiry by a Class Member is directed at Defendants, Defendants will (1) tell the class member that they are not permitted to discuss the settlement with the class member and (2) direct the class member to call Class Counsel and provide contact information for Class Counsel. Acceptable contact information is:

Philip Krzeski
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 715-8712
pkrzeski@billerkimble.com
billerkimble.com

**8.  Notice under this Agreement shall be as follows:**

**Plaintiffs' Counsel:**
Philip Krzeski
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
pkrzeski@billerkimble.com

**Defendants' Counsel:**
Michael Ball
Vorys, Sater, Seymour and Pease, LLP
52 East Gay St.
Columbus, OH 43216-1008
mjball@vorys.com

Either party may modify their contact information for purposes of this section (*i.e.*, name, firm name, address, or email address) by providing written notice to the other party.

9.  **Defendants' Option to Revoke and Effect of Failure to Grant Approval:**

    A.  In the event that either (1) Defendants exercise the above option to revoke the Agreement if 10% or more of the Class Members opt-out, or (2) the Court does not approve the Agreement, then the Agreement will be rendered null and void. The Parties will make a good faith effort to resolve the matter, including any particular issues raised by the Court regarding the Settlement Agreement. Absent a negotiated resolution, the Parties will revert to their respective positions prior to the Agreement being reached.

The Parties retain their right to seek reconsideration or appellate review of any aspects of the Court's Order denying approval of the Settlement Agreement in whole or in part.

10. **Other Terms**

    A.  By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiff or to the Class Members, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action treatment, other than for purposes of settlement.

    B.  No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

C. This Agreement, including any exhibits, constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

D. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance. To the extent the releases contained in the Agreement are held to be illegal, invalid, or unenforceable, the Parties shall proceed as follows:

    i. The Lawsuit will resume unless: (a) a Party seeks reconsideration or appellate review of the decision denying approval of settlement, or (b) the Parties attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

    ii. In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement. The Agreement shall be void and the Parties shall revert to their position *status quo ante*.

E. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

F. Ohio law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing, interpreting, and enforcing the terms of the Agreement.

G. This Agreement may be executed by facsimile or electronically and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

H. Plaintiff and her Counsel agree that none of the documents provided to them by Defendants shall be used for any purpose other than prosecution of this Class Action.

I. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the

Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

J.  If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

*Kacey McConnell*

_____          October 26, 2020
Kacey McConnell                                                              _____
                                                                             Date

On behalf of The Estate of Michael McConnell,
Individually and as Class Representative


On behalf of EUBA Corp.:

_____          _____
Steve DePugh                                                              Title

_____          _____
Signature                                                                   Date

On behalf of Steve DePugh

_____          _____
Print Name                                                                 Title

_____          _____
Signature                                                                   Date



BILLER & KIMBLE
LLC

Audit Trail

## Document Details

| | |
|---|---|
| **Title** | McConnell v EUBA Corp - Settlement Agreement (agreed).pdf |
| **File Name** | McConnell v EUBA Corp - Settlement Agreement (agreed).pdf |
| **Document ID** | 3fe5410197d5432596f73f91f1758380 |
| **Fingerprint** | 6bd6938c6197c7083ed44c57c8f09640 |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created<br>Fingerprint: 6bd6938c6197c7083ed44c57c8f09640 | Oct 26 2020<br>02:43PM<br>America/New_York |
| **Document Sent** | Document Sent to Kacey McConnell (kacey.babii@gmail.com) | Oct 26 2020<br>02:43PM<br>America/New_York |
| **Document Viewed** | Document Viewed by Kacey McConnell (kacey.babii@gmail.com)<br>IP: 8.48.248.0 | Oct 26 2020<br>03:14PM<br>America/New_York |
| **Document Viewed** | Document Viewed by Kacey McConnell (kacey.babii@gmail.com)<br>IP: 8.48.248.0 | Oct 26 2020<br>03:21PM<br>America/New_York |
| **Document Signed** | Document Signed by Kacey McConnell (kacey.babii@gmail.com)<br>IP: 8.48.248.0 | Oct 26 2020<br>03:54PM<br>America/New_York |
| **Document Completed** | This document has been completed.<br>Fingerprint: 41e6e50b3b27b6807f4e5683375d3399 | Oct 26 2020<br>03:54PM<br>America/New_York |