IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

The Estate of Michael McConnell,

*On behalf of himself and those similarly situated*,

Plaintiff,

v.

EUBA Corp. *et al.*,

Defendants.

Case No. 3:18-cv-00355

Judge Walter H. Rice

# PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiff asks that the Court grant final approval of the parties' Settlement Agreement, Doc. 52-1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the collective and class-wide claims raised in this lawsuit. Defendants do not oppose this Motion.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar #0081452)
Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236

Telephone: (513) 202-0710
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

# Memorandum in Support of Plaintiff's Unopposed Motion for Final Settlement Approval

## 1. Introduction and Case History

The parties have resolved this pizza delivery driver under-reimbursement lawsuit. On November 23, 2020, the Court preliminarily approved the parties' Settlement Agreement. *See* Doc. 54. Pursuant to the Court's Order, the parties have carried out the class action notice process contemplated in Settlement Agreement. The Notice process is now complete. None of 698 Domino's delivery drivers who make up the class objected to or opted out of the Settlement.

Plaintiff now seeks an order (1) granting final approval of the Settlement Agreement previously filed as Doc. 52-1 as fair, reasonable, and adequate; (2) certifying this case as a Rule 23 Class Action for settlement purposes; (3) approving the requested award of attorney's fees and costs; (4) approving the service award; (5) dismissing the action with prejudice; and (6) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

## 2. Case Background

On October 30, 2018, former Plaintiff Mary Buckles filed this lawsuit on behalf of herself and similarly situated delivery drivers. The case alleges that Defendants' 14 Domino's stores underpay their delivery drivers because (1) they pay at or close to minimum wage, (2) they require the drivers to provide a car to use at work, and (3) they do not properly or fully reimburse the drivers for their automobile expenses. Doc. 1.

Shortly after the case was filed, Defendants moved to dismiss and compel Ms. Buckles to pursue her claims in arbitration. Doc. 11. Ms. Buckles did not dispute that she signed a valid arbitration agreement, and therefore agreed to pursue her claims in arbitration. Doc. 14. She did oppose, however, the outright dismissal of the lawsuit for two reasons. First, by that time, an opt-in Plaintiff, the Estate of Michael McConnell ("Mr. McConnell"), had joined the case who had not signed an arbitration agreement. *Id*. Second, even if Mr. McConnell had not joined the case, since this case involves FLSA claims, the parties would need to seek the Court's approval for any settlement of Ms. Buckles' claims for it to be enforceable. *Id*. Plaintiff sought to amend her complaint to substitute Mr. McConnell as named Plaintiff and class representative. Doc. 17. On September 24, 2019, the Court granted Plaintiff's Motion for Leave and granted Defendants' Motion to Compel in part, staying Ms. Buckles' case pending arbitration. Doc. 24.

Ms. Buckles proceeded to arbitration and settled her claims. The Court approved Ms. Buckles' settlement with the Defendants on November 14, 2019. Doc. 35.

On October 14, 2019, Plaintiff McConnell moved to send notice of a collective action. Doc. 27, 36, 38. Also, in the fall of 2019, Plaintiff moved for partial judgment on the pleadings, and Defendants cross-moved for partial judgment on the pleadings. Doc. 30, 37, 40, 45. The parties' cross-motions addressed what legal standard applies to the delivery drivers' under-reimbursement claims: the DOL Handbook standard, adopted numerous times by this Court[1], or the "approximation" standard advanced by Defendants. *Id*.

[1] *E.g.*, *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 5, 2018) ("*Brandenburg I*"); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-3716199, 2019 U.S. Dist. LEXIS 204371, at *3 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*") (approving settlement and explaining "there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost."); *Hatmaker v. PJ Ohio, LLC,* No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, at *21 (S.D. Ohio Nov. 5, 2019); *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *3 (S.D. Ohio Nov. 5, 2020)("Courts

On August 31, 2020, at the prompting of a pizza company supposedly not involved in litigation, the Department of Labor issued an Opinion Letter purporting to reject its own long-standing Handbook standard in favor of the pizza industry's preferred "approximation" standard. Department of Labor Opinion Letter, 2020-12. On September 4, 2020, Plaintiff filed a Motion for Leave to Submit Supplemental Briefing on the Cross-Motions for Judgment on the Pleadings, seeking an opportunity to explain to the Court why the Court's previous opinion in *Brandenburg* was correct, and the DOL's new Letter was wrong. Doc. 49. The Court granted Plaintiff's request, and the parties were set to file competing supplemental briefs by October 12, 2020. *See* Notation Order sustaining Motion for Leave to File Supplemental Briefs (Sept. 9, 2020).

Before that deadline came about, the parties attended mediation and reached the settlement that is currently before this Court. Doc. 50. On October 26, 2020, the parties presented their Settlement Agreement for preliminary approval. Doc. 52. On November 23, 2020, the Court granted preliminary approval.

**3. The drivers' claims.**

Plaintiff asserts a claim on behalf of pizza delivery drivers that is ubiquitous in federal courts. First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the automobile expenses that drivers incurred in having to use their own cars to deliver food resulting in unpaid minimum and overtime wages. As this Court explained, "[b]ecause the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. §531.35, and required by [defendants]

in this district defer to the Handbook to resolve the regulatory ambiguity on this issue. *Id.* The same standard applies to Ohio's minimum wage law."); *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, *2 (N.D. Ill. Feb. 26, 2020) ("As a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service.").

as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid." *Brandenburg I*, 2018 U.S. Dist. LEXIS 189878, at *11. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage rate), any under-reimbursement triggers a clam for unpaid minimum wages under the FLSA and Ohio wage law. *See Arp*, 2020 U.S. Dist. LEXIS 207512, at *3. In opposing this claim, Defendants contend that pizza industry employers are permitted to "reasonably approximate" the drivers' automobile expenses. *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1287 (D. Kan. 2010). On the under-reimbursement claim, Plaintiff sought unpaid wages calculated as the difference between the IRS standard business mileage rate and the reimbursement actually paid for each mile driven, plus FLSA liquidated damages in the amount of 1× unpaid wages, plus Ohio Constitution, Article II, Section 34a damages in the amount of 2× unpaid wages.

Second, Plaintiff claims that Defendants violated the requirements for claiming a tip credit as required by 29 U.S.C. § 203(m), and therefore were not permitted to claim a tip credit for the hours the drivers worked on the road making deliveries. Specifically, Defendants claimed a tip credit for a certain amount, *e.g.*, $2.55 per hour, as an offset to their minimum wage obligation, such that they could pay the drivers $6.00 per hour while they were on the road making deliveries in 2019. But, as a result of their failure to adequately reimburse the delivery drivers, Defendants effectively paid the drivers less than $6.00 per hour, thus failing to meet one of the criteria for properly claiming a tip credit. *See, e.g., McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016) (holding that failure to pay tip credit wage rate triggers tip credit violation); *Ornelas v. Los Arrieros*, 232 F.Supp.3d 962, 970 (N.D. Ohio Jan. 9, 2017) (holding that Defendants' failure to

pay tip credit wage rate rendered them ineligible for tip credit under Ohio law). On this claim, Plaintiff sought the "tip credit differential"—*i.e.*, the difference between full minimum wage and the tipped wage rate paid—for all hours worked on the road by Defendants' delivery drivers, plus FLSA liquidated damages at 1× unpaid wages and Ohio Constitution damages at 2× unpaid wages.

Third, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

Fourth, Plaintiff asserted a claim under R.C. § 2307.60 for civil liability for a criminal act. *See, e.g.*, *Buddenberg v. Weisdack*, 2020-Ohio-3833, ¶¶11–22. Under subsection (A) of the statute, Defendants may also be subject to punitive damages.

**4. Summary of Settlement Terms**

The settlement agreement creates a settlement fund of $850,000, inclusive of attorney's fees, expenses, and service awards. *See* Doc. 52-1. Under the terms of the Agreement, each Class Member who worked for Defendants at any time between October 30, 2015 and October 2, 2020 will receive a share of the settlement fund.

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed to the Class Members based on their *pro rata* share of the remaining settlement fund. The *pro rata* share will be determined as follows: Each Class Members' under-reimbursed expenses will be calculated as $.55 per mile driven – actual reimbursement paid to the class member by

Defendants. *See* Doc. 52-1 at ¶ 3(C)(ii)(a). Each Class Members' additional damages are determined by multiplying the under-reimbursed expenses by one. *Id.* at ¶ 3(C)(ii)(b). Each Class Members' under-reimbursed expenses and additional damages are added together to determine their Maximum Possible Award. *Id.* at ¶ 3(C)(ii)(c). To the extent the maximum possible award exceeds the remaining portion of the Settlement Fund, the Class Members' award amounts are reduced on a pro rata basis. *Id.* at ¶ 3(C)(ii)(d).

Defendants' data shows that the class members together drove a total of 4,722,193 miles during the settlement period and were reimbursed $1,952,838.46 for those miles. As such, Defendants reimbursed the drivers a reimbursement rate of approximately $.41 per mile. Under the terms of the settlement, even after deducting for attorneys' fees, litigation costs, administration costs, and service awards, each class member will receive an additional $.11 per mile as a settlement award, for an average of $772.56 per class member. *See* Exhibit 1, Declaration of Andrew Kimble ("Kimble Decl."), ¶ 13.

**5. Notice Process**

After the Court entered preliminary approval, the parties retained claims administrator CPT Group to distribute the Notice of Settlement to the 698 class members. *See* Ex. 2, Notice Summary Provided by CPT Group. The Notice Period lasted from January 8, 2021 to March 9, 2021. Notice was sent by first class mail and email, to the extent there was an email address available. When mailings were returned as undeliverable, CPT Group made efforts to obtain new addresses for class members by performing skip tracing searches. Out of the 698 notices, only 18 (2.5%) of the notices remained undelivered as of the close of the notice period, which is a good result under the circumstances. *See* Ex. 2; *Arp,* 2020 U.S. Dist. LEXIS 207512, at *11. None of the

class members have opted out or objected to the settlement. *See* Kimble Decl., ¶ 15-16. This notice process meets the requirements stated in Rule 23(c)(2).

**6. Standard for Settlement Approval**

The Sixth Circuit also adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1268, 1372 (6th Cir. 1976) ("Public Policy strongly favors settlement of disputes without litigation."). Class settlements conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594–95 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

**6.1. Standard for Rule 23 Class Settlements.**

Courts use a three-step procedure for approving class settlements. *Bailey v. Verso Corp.,* No. 3:17-cv-332, 2021 U.S. Dist. LEXIS 31807, at *6-7 (S.D. Ohio Feb. 22, 2021). At the first step, the Court determines whether to preliminarily approve the settlement. *Id*. Next, notice is issued to potential Class Members. *Id*. Finally, the Court must decide whether to finalize approval after holding a hearing. *Id*. Rule 23(e)(2) provides that the Court may approve the settlement if it is fair, adequate, and reasonable. In evaluating this question, courts in the Southern District of Ohio have considered:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
2. The complexity, expense and likely duration of the litigation;
3. The stage of the proceedings and the amount of discovery completed;
4. The judgment of experienced trial counsel;
5. The nature of the negotiations;
6. The objections, if any, raised by the class members; and
7. The public interest.

*See, e.g., Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, *19-20 (S.D. Ohio May 30, 2012).

**6.2. Standard for Wage and Hour Settlements.**

Likewise, in evaluating an FLSA settlement and an Ohio wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of class action…" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, *18, *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute; (2) fair, reasonable, and adequate; and (3) reached through arms-length negotiation. *Id.* As described below, the proposed settlement meets this standard.

**6.3. The parties' settlement meets the standard for approval.**

Plaintiff detailed in his Motion for Preliminary Approval why the parties' settlement meets all of these factors. Doc. 52, PageID 501-06. Plaintiff incorporates those arguments herein. The only factor Plaintiff was unable to address at the preliminary approval stage were the objections raised by absent class members. Now that the notice period is complete, Plaintiff can address this factor—none of the 698 class members opted out or objected to the settlement. *See* Ex. 2. As such,

this final factor, like all of the others, weighs in favor of settlement approval. Because all factors favor approval, the Court should grant final approval.

Even after deducting for attorneys' fees, litigation costs, administrative costs, and service awards, each class member will receive, on average, an additional $.11 per mile driven under the terms of the settlement. Considering Defendants' data indicates they were already reimbursed, on average, at $.41 per mile, this amounts to an excellent result for the delivery drivers.

**7. Certification of Settlement Class is appropriate.**

In his Motion for Preliminary Approval, Plaintiff explained why Rule 23 class and FLSA collective certification are appropriate. *See* Doc. 52, PageID 508-16. Defendants consent to class/collective action certification for settlement purposes. *Id*. Plaintiff incorporates his arguments from the Motion for Preliminary Approval for why certification of a Rule 23 Settlement Class is appropriate. *Id*.

**8. The payment of attorney's fees and costs is reasonable.**

Class counsel seeks an attorneys' fee award of 1/3 of the settlement fund, or $283,333.33, plus reimbursement of $2,923.14 in advanced litigation expenses. "District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h)." *Arp,* 2020 U.S. Dist. LEXIS 207512, at *15. In addition, the FLSA and the Ohio Constitution provide the right to attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Oh. Const., Art. II, Section 34a.

When assessing the reasonableness of a fee petition in a class action, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of

the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

**8.1. The Court should adopt the percentage approach.**

First, the Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *16.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.*, *quoting Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sept. 20, 2019), *and Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at *14-15 (S.D. Ohio July 11, 2014). It is, therefore, the "preferred method in this district." *Id.* "Absent compelling reasons to the contrary," courts in the Southern District of Ohio prefer the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021).[2] "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc.*

[2] In wage and hour cases, the "compelling circumstances" that give rise to application of the lodestar method usually involve a situation where a plaintiff or a class of plaintiffs' damages are relatively small, but they have suffered damages nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the case—in order to help workers recover their wages. It is essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

*Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id*.

Here, the Court should adopt the percentage of the fund approach and award class counsel 1/3 of the settlement fund in attorneys' fees. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *14-15; *see also, e.g.*, *Arp*, 2020 U.S. Dist. LEXIS 207512, at *15-16 (awarding one-third, noting "no reason in this case to deviate from the norm"); *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018)( "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10-11 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[3]

[3] *See, e.g.*, *In re Foundry Resins Antitrust Litig.,* No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig*., No. No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *4 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Docs. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

This case presents a good example of why the percentage method is preferred in this district. Plaintiff aggressively moved for partial judgment on the pleadings at a very early stage in this case, based largely on class counsel's expertise from and work in other pizza delivery driver cases. In other words, instead of seeking to "churn" hours, class counsel sought right away to set an advantageous and streamlined legal standard that would set this case on a course for judgment. This advocacy has resulted in a substantial benefit to the class. While the lodestar method could potentially punish class counsel for their efficient and aggressive approach, the percentage method rewards class counsel, as it should.

### 8.2. The *Ramey* Factors.

Next, the Court must analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *11 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2018 U.S. Dist. LEXIS 139769, at *7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. *After* deducting the requested attorneys' fees, litigation costs, administrative costs, and incentive award, each of the class members who do not opt out will receive a check for an average of $.11 for each mile they drove while completing deliveries for Defendants' Domino's Pizza stores. Kimble Decl. at ¶ 13. This is an excellent result considering there was a chance the drivers could have lost altogether. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth,* 2010 U.S. Dist. LEXIS 20446, *20 (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.*, *citing Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017). Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted). This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis. Kimble Decl., ¶ 19. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required, it supports the requested attorneys' fees award. Class counsel has worked 243.2 hours on this case for a total lodestar of $96,665.00. This results in an average hourly rate of $397.47 and a lodestar multiplier of 2.9. In 2019, this Court approved the same hourly rates used here for the primary attorneys who worked on this case. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *17 (approving hourly rates for Andy Biller at $600 per hour; Andrew Kimble at $550 per hour; and Phil Krzeski at $350 per hour); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. Erica Blankenship, another associate attorney at Biller & Kimble who worked 17 hours on this case, was also billed at $350 per hour. Ms. Blankenship's hourly rate is reasonable based on her years of valuable experience. Ms. Blankenship has been an attorney for 6.5 years and, before joining Biller & Kimble, worked as prosecutor in Boone County, Kentucky and as a law clerk for the Supreme Court of Kentucky. Her hourly rate of $350 per hour is reasonable.

In addition to the hours class counsel has worked on this particular pizza delivery driver case, Biller & Kimble, LLC has worked thousands of hours on pizza delivery driver cases and other types of wage and hour cases throughout the country in recent years. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *6 (noting counsels' expertise in this specific area of law); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *20-21 (explaining that it is appropriate to consider work on similar cases in deciding whether a fee is reasonable). These hours informed class counsel's work in this case and made them more efficient. For example, class counsel expended just over 6 hours in this case on their Motion for Judgment on the Pleadings (Doc. 30). Kimble Decl. at ¶ 26. Under normal circumstances, this task that would require dozens of hours of research and writing. But, because class counsel has addressed this issue so many times in other cases, they were able to present these

extremely complex arguments to this Court in an efficient way. This efficiency served the class's interests. Further, class counsel will put in more time on this case after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. This factor supports the requested fee award. *See, e.g., Id.* (approving 5.29 multiplier); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *17 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable). In light of class counsel's experience and expertise in wage and hour law, their hourly rates are appropriate, and their lodestar multiplier of 2.9 is reasonable.

Fifth, as discussed throughout this Motion, wage and hour class/collective actions are "inherently complex." *Arledge,* 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. Class counsel has substantial experience in pizza delivery driver litigation. Kimble Decl., ¶¶ 21-38. Defendants' counsel, Michael Ball, a Partner at Vorys Sater Seymour and Pease LLC, is likewise a highly experienced employment lawyer and litigator. This factor supports the requested fee award.

Since all of the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees.

Finally, class counsel incurred only $2,923.14 in advanced litigation costs in pursuit of this case. These costs relate to the filing fee, mediation fees, and costs associated with analyzing

Defendants' mileage and reimbursement records. These costs are reasonable and should be awarded to class counsel out of the settlement fund.

**9. The incentive payment to Plaintiff should be approved.**

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff: $10,000. This amount is in line with identical amounts awarded in nearly identical cases. *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *16-17; *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 U.S. Dist. LEXIS 11019, *16-17 (S.D. Ohio Jan. 18, 2019); *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *21-22; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019). Here, the incentive award is somewhat unique. The incentive award, if granted by the Court, will go to the Estate of Plaintiff, Michael McConnell. For practical purposes, that means the incentive award will eventually go to Kacey McConnell, who is Plaintiff McConnell's daughter. Kacey McConnell, as representative for her father, stood up to be class representative in this case on behalf of him and his fellow delivery drivers. Despite not being a driver herself, she was essential to the class achieving the result it achieved. Ms. McConnell helped her counsel in gathering whatever information they needed, worked hard to understand the drivers' legal claims so she could do well in her role, and ultimately approved of the settlement on behalf of the class. Without Plaintiff's participation, this class settlement would not have occurred. Plaintiff asks the Court to approve the service fee award of $10,000.

**10. Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for Motion for Final Settlement Approval and for an Award of Attorney's Fees and Expenses.

Respectfully submitted,

/s/ Andrew Kimble

Andrew R. Biller (Ohio Bar #0081452)
Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April 2021. I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Defendants.

/s/Andrew Kimble
Andrew Kimble