In the United States District Court
for the Southern District of Ohio
Western Division at Dayton

| | |
|---|---|
| The Estate of Michael McConnell, | |
| *On behalf of himself and those similarly situated,* | Case No. 3:18-cv-00355 |
| Plaintiff, | Judge Walter H. Rice |
| v. | |
| EUBA Corp. *et al.,* | |
| Defendants. | |

Order and Decision Granting
Plaintiff's Motion for Final Settlement Approval

Before the Court is Plaintiff's Motion for Final Approval (Doc. 53) of a settlement on behalf of members of an FLSA collective action and Rule 23 class action. On May 3, 2021, the Court held a Final Fairness Hearing on this matter. Plaintiff's Motion is now ripe for adjudication.

I.   **Background**

This is a wage and hour lawsuit brought on behalf of a class of delivery drivers at approximately fourteen Domino's Pizza franchise locations in Ohio. Plaintiff Michael McConnell was one of those drivers. Plaintiff raises a number of claims under the Fair Labor Standards Act, the Ohio Constitution, Article II, Section 34a, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq.*, the Ohio Prompt Pay Act, O.R.C. 4113.15, and O.R.C. 2307.60. Those claims are discussed below.

A.   **Under-reimbursement of Vehicle Expenses**

1

Plaintiff and other drivers delivered food for Defendants' Domino's Pizza operation and used their own cars to do so. Plaintiff contends that Defendants under-reimbursed the drivers for the expenses that the drivers incurred in having to use their own vehicles.

It is well-established that employers must reimburse employees for expenses that they incur when an employee provides "tools of the trade" used in the employee's work. *See* 29 C.F.R. 531.35. Likewise, there is little dispute that a car is a delivery driver's "tool of the trade." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*"). Courts in this district have concluded that, in order to comply with the FLSA and Ohio minimum wage law, employers of minimum wage delivery drivers who provide cars to use at work must either keep track of and reimburse for the drivers' actual automobile expenses or reimburse at the IRS standard business mileage rate for each mile driven. *Id.* at *11; *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *7 (S.D. Ohio Nov. 5, 2019), *motion to certify appeal denied*, 2019 WL 7421952 (S.D. Ohio Dec. 23, 2019); *Waters v. Pizza*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, at *28 (S.D. Ohio May 7, 2021).

In this case, Plaintiff alleges that, across the class, the under-reimbursed amount is approximately $650,000 during the relevant time period. Defendants raise a number of defenses to Plaintiff's claims, including Plaintiff's calculations of the miles driven and amounts owed.

### B. Tip Credit Violation

Plaintiff also claims that Defendants failed to meet the requirement for claiming a tip credit because they did not fully reimburse for automobile expenses. In order to claim a tip credit under 29 U.S.C. 203(m) and Ohio law, employers must meet the requirements set forth in 29 C.F.R. 531.59(b). Specifically, prior to taking a tip credit, the employer must inform the tipped employee of the amount of the cash wage that is to be paid to the tipped employee by the employer; the

2

additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. *Id.* "The requirements of the tip credit are strictly construed and employers must comply with them even if…[plaintiffs] actually earned more than minimum wage for every shift they worked." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.3d 220, 228-30). When an employer fails to actually pay the cash wage that they informed their tipped employees that they would pay, the employer fails to meet the requirements for taking a tip credit. *Ornelas v. Los Arrieros*, 232 F.Supp.3d 962, 970 (N.D. Ohio Jan. 9, 2017).

Here, Plaintiff contends that Defendants under-reimbursed delivery drivers, thereby failing to pay the cash wage they promised to pay. As a result, Plaintiff claims Defendants were not entitled to claim a tip credit. Plaintiff estimates that the class-wide unpaid wages for the tip credit differential claim are approximately $1 million. Defendants dispute both liability and this estimate.

### C. Ohio Prompt Pay Act

Plaintiff alleges that, as a result of the above claims, Defendants necessarily violated Ohio's Prompt Pay Act, O.R.C. § 4113.15. Plaintiffs are correct that an underlying wage and hour violation can give rise to a Prompt Pay Act claim. *See, e.g., Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016).

Of relevance here, the Prompt Pay Act allows employees to sue for two measures of damages. First, the employee may sue for any wages due under another law but not timely paid

3

under the Prompt Pay Act. *Id.* Second, the employee may sue for liquidated damages arising from any wages "not in contest or disputed" but still unpaid. O.R.C. 4113.15(B).

The parties do not dispute that, whether under the FLSA, Prompt Pay Act, or the Ohio Minimum Fair Wage Standards Act, employees may only recover their unpaid wages once, even if entitlement to those wages arises under multiple laws. The parties do dispute, however, whether any of the allegedly unpaid wages in this case are "not in contest or disputed." Thus, had the case proceeded, the Court would need to adjudicate whether any or all of the claims at issue could give rise to liquidated damages under the Prompt Pay Act.

### D. O.R.C. 2307.60

Finally, Plaintiff claims under O.R.C. § 2307.60 that the delivery drivers are entitled to compensatory and punitive damages as a result of Defendants' criminal act of willfully violating the Fair Labor Standards Act. The FLSA carries criminal penalties for willful violations. 29 U.S.C. § 216(a). The Ohio Revised Code provides compensatory and punitive damages for those injured by another party's criminal act. O.R.C. § 2307.60(A)(1); *see also Buddenberg v. Weisdack*, 2020-Ohio-3832 (Ohio 2020) (holding that claim under § 2307.60 requires a criminal act, not a criminal conviction). Defendants dispute that they willfully violated the FLSA and therefore dispute this claim. Had the case proceeded, the Court would need to adjudicate whether the drivers were entitled to any damages under O.R.C. 2307.60.

## II. The Settlement Agreement

The Settlement Agreement obligates Defendants to pay a total of $850,000. Doc. 52-1, Settlement Agreement, § 3.A. After deducting amounts allocated to fees, expenses, and a service award, the remaining funds will be distributed to class members on a *pro rata* basis. Each drivers' *pro rata* share is determined by calculating the difference between the reimbursements they did

receive and the reimbursements they would have received if they were reimbursed at an approximate IRS rate of $.55 per mile. *Id.* at § 3.C. The class members' settlement checks will be mailed the later of 40 days after Final Approval or August 2, 2021. *Id.* at § 3.D.

Class members will have 180 days to cash their settlement checks. To the extent any funds remain unclaimed after all of the checks issued have become stale, the claims administrator will distribute the remaining funds on a *pro rata* basis to all of the class members who received and negotiated their checks, with class members receiving a minimum of $10 each. To the extent the remaining funds are insufficient for each class member to receive at least $10, only then will the unclaimed funds revert to Defendants.

Before delving into the factors relevant to settlement approval, the Court notes that the proposed plan of distribution is appropriate. The Court finds that dividing most of the settlement funds among the class members based on their miles driven and reimbursements paid will allocate money in a way that fairly accounts for each person's claim; *i.e.*, those with the most alleged damages will receive the most money and vice versa. This is a fair and reasonable way to distribute the money. In exchange for the settlement payments, Plaintiff and the class members who cash or otherwise negotiate his or her check, release "all wage and hour claims accrued from October 30, 2015 until October 2, 2020 relating to the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of delivery expenses, "dual jobs" claims, overtime claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the wage and hour laws of Ohio and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all

5

claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit." Settlement Agreement, § 5.C. All class members also release their equivalent Ohio law claims, regardless of whether they cash their settlement check.

The Court finds that these releases are appropriately narrowed to the claims raised in the lawsuit. The Court is mindful that, because of the remedial nature of wage and hour laws, it is important that releases not exceed the scope of the claims raised in the lawsuit or those claims arising from the same facts alleged in the lawsuit. This release meets that requirement.

### III. Analysis

#### A. Standard to approve an FLSA and Class Action Settlement

Courts use a three-step procedure for approving class settlements. *Bailey v. Verso Corp.*, No. 3:17-cv-332, 2021 U.S. Dist. LEXIS 31807, at *6-7 (S.D. Ohio Feb. 22, 2021). At the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice is issued to potential Class Members. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.* Because proposed settlement payments to minimum wage workers are delayed until the Court completes the approval process, courts endeavor to rule expeditiously on proposed class settlements.

On November 23, 2020, the Court granted preliminary approval of the settlement and approved the form of Notice to be distributed to the class members. Thus, the Court must determine (1) whether the notice process was appropriate, taking into account the results of the notice, and (2) whether the proposed settlement agreement is fair, adequate, and reasonable.

### B. The Notice Process

The parties retained a third party administrator to distribute the Notice of Settlement to 698 class members. Notice was sent by regular mail only because Defendants did not have email addresses for the class members. To the extent that mail was returned as undeliverable, the administrator was instructed to run those names through a change of address database and resend the notice if possible.

During the Fairness Hearing, the Court questioned Class Counsel regarding the outcome of the notice process. Class Counsel reported that less than 2.5% of the notices were returned as undeliverable and were not able to be forwarded to an updated address. The Court finds that the notice process was appropriate in this case. The Court further finds that an undeliverable rate of 2.5% is a good result and further supports the Court's holding that notice was adequate in this case.

### C. The Settlement is Fair, Adequate, and Reasonable

Before a court approves a settlement, the Court must find that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *2 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*"). Courts examine seven factors when considering settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Id.* This Court has also considered whether the notice process was adequate, and will do so here as well. *Id.*

#### i. The Risk of Fraud or Collusion

The records before the Court reflects that this settlement was the product of arms-length negotiations conducted by experienced counsel on both sides. This factor weighs in favor of approval.

### ii. The Complexity, Expense, and Likely Duration

Wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Brandenburg II*, 2019 WL 6310376, at *3. This case was no exception.

Even aside from the legal issues present in the case, the factual issues in this case added to its complexity and likely duration. In particular, this case would have involved a complicated analysis of Defendants' mileage, reimbursement, and automobile expense records. Moreover, Plaintiff's tip credit notice claim involved disputed issues of fact that would increase the cost of this litigation.

The Court finds that, given the complexity, expense, and likely duration of this lawsuit, a settlement at this time benefits the parties and weighs in favor of approving the settlement.

### iii. The Amount of Discovery Engaged in by the Parties

In under-reimbursement delivery driver cases, discovery focuses "mainly on the records Defendants are required to keep under the FLSA and Ohio law." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 WL 1129325, at *3 (S.D. Ohio Mar. 6, 2020). Here, the parties engaged in a review of Defendants' mileage and pay records, the key pieces of evidence in an under-reimbursement case. *Id.* ("An employer's own records will answer the question of whether the employer complied with minimum wage laws.") The Court is satisfied that both parties were fully informed as to the strengths and weaknesses of their respective positions and that settlement is appropriate in that situation.

### iv. The Likelihood of Success on the Merits

The Court must, of course, consider the settlement's overall terms and the class relief obtained. Here, the primary claim involved under-reimbursed vehicle-related expenses that resulted in, according to Plaintiff, approximately $650,000 in unpaid wages. However, Defendants dispute these calculations. Defendants also dispute liability on both the under-reimbursement claim and the tip credit differential claim. Thus, there was substantial risk that the class could have received less if the case were to proceed to judgment.

The Court also notes that Plaintiff evaluated the financial status of Defendants in considering this settlement, and there was concern over whether Defendants would have been able to pay a judgment for the full amount owed. The Court finds the settlement to be a good result for the class considering the claims and circumstances of the case.

### v. The Opinions of Class Counsel and Class Representatives

Kacey McConnell, representative for the estate of her father, Michael McConnell, was present at the hearing and approved of the Settlement Agreement. Her counsel spoke in favor of the settlement and represented that this was an excellent result for the class. Class counsel's judgment is entitled to "significant weight" and, in this case, supports approving the settlement. *See Brandenburg II*, 2019 WL 6310376, at *4.

### vi. The Reaction of Absent Class Members

No class member objected or excluded him or herself from the settlement prior to or during the Fairness Hearing. The lack of objections/exclusions supports approval.

### vii. The Public Interest

The public interest favors the settlement of class action lawsuits. This is especially true in the cases involving wage and hour claims, which, by their very nature implicate the public interest. When a settlement is otherwise fair and reasonable, the public interest is advanced by the

settlement. Here, the settlement provides relief to the class members, avoids further litigation in a complex case, and frees judicial resources. Accordingly, this factor favors approving the settlement.

Thus, the Court **GRANTS** Plaintiff's Unopposed Motion for Final Settlement Approval.

### b. Fees, Expenses, and Service Awards

#### i. Plaintiff's Counsel's Fees

Class Counsel asks the Court to approve an attorney's fees award of one-third of the settlement fund, *i.e.*, $283,333.33. Defendants do not object to the requested fee award.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). In addition, the FLSA and the Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Oh. Const., Art. II, Section 34a.

When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### a. The Court adopts the percentage approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible

approach allows the Court to account for the unique and varied circumstances present in each class action.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Herbert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019), *quoting Swigart v. Fifth Third Bank*, 2014, WL 3447947, at *5 – 6 (S.D. Ohio July 11, 2014). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *3 (S.D. Ohio Nov. 5, 2020).

There are, occasionally, "compelling reasons" to apply the lodestar method in wage and hour cases. Specifically, many wage and hour cases involve relatively small claims and therefore small amounts of damages suffered by the workers in question. In such a circumstance, counsel for the worker is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the damages in the case—in order to help the worker recover his or her wages. It is necessary for the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these efforts. "The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is

11

that the monetary value of their claims is often too small to support the cost of litigating them." *Rembert*, 986 F.3d at 617. In these circumstances—where, given the size of the damages suffered by the workers—the percentage method would not provide a "reasonable fee" that is "adequately compensatory to attract competent counsel." *Id.* This is the type of "compelling reason" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

The Court does not find that this case involves a settlement amount too low to yield an adequate fee under the percentage-of-the-fund method. Nor are there any other compelling circumstances to justify deviating from awarding a percentage-of-the-fund. Here, the Court will use the preferred method in this district and award a percentage-of-the-fund.

### b. The *Ramey* Factors

In reviewing the reasonableness of the requested fee award, courts consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2018 WL 3957364, at *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could

predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, Class Counsel's work resulted in significant benefit to class members whereby each class member will receive, on average, $772.56. To receive this money, class members do not need to take any action other than cash a check that will be mailed to them. The Court finds that this is an excellent result that supports the proposed fee award.

Second, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage and hour cases brought on behalf of minimum workers. In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, Class Counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery. *See* Kimble Dec., Doc. 53-1, ¶ 19. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiff's counsels' fee request. *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.

At least as of the time of Class Counsel's fee submission, Class Counsel had spent approximately 243 hours on this case. This Court has already approved the rates used by the three

primary attorneys in this case ($600 for Andrew Biller, $550 for Andrew Kimble, $350 for Philip Krzeski). *Brandenburg II*, 2019 WL 6310376, at *6; *Arp*, 2020 U.S. Dist. LEXIS 207512, *19. The Court hereby also approves the hourly rate of $350 per hour used for Erica Blankenship, an associate attorney at Biller & Kimble, LLC. Finally, the Court approves the rates of $100 to $150 for support staff and law clerk time. In total, Class Counsel's lodestar is appropriately $96,665, at an average hourly rate of $397.47. Given this case's size, complexity, and difficulty, the Court finds that the hours expended, total lodestar, and average hourly rate are all reasonable.

The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters.

The multiplier on Class Counsel's lodestar is approximately 2.9 before accounting for any additional work. This is within the acceptable range. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court notes that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation.

Fifth, as noted above, this was a complex wage and hour class/collective action. The Court finds that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiff and Defendants are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. During the Fairness Hearing, Defendants' counsel, Michael Ball, described Biller & Kimble, LLC as the "gold standard" when it comes to pizza delivery litigation. The Court agrees that Biller & Kimble, LLC have proven themselves to be highly skilled advocates for pizza delivery drivers and other workers. *See, e.g., Mullins v. S. Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019) (noting Biller & Kimble, LLC's skill and expertise in wage and hour cases like this one). Likewise Mr. Ball is himself a highly skilled and experienced expert in the area of employment law from the management side. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Class Counsel's request for fees in the amount of $283,333.33.

### ii. Reimbursement of Expenses

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of the claims and in obtaining a settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Here, Class Counsel requests reimbursement of $2,923.14. As explained in Plaintiff's briefing and at the Fairness Hearing, the bulk of this was from (1) the filing fee, (2) mediation fees, and (3) costs associated with analyzing Defendants' mileage and reimbursement records.

The Settlement Agreement also provides that claims administration costs will be deducted from the common fund. The claims administrator's fees are $14,500.

The Court finds these expenses to be reasonable and necessary in connection with litigating and resolving this case. Defendants do not dispute that the fees are reasonable and reimbursable.

The Court **GRANTS** Class Counsel's request for expense reimbursement in the amount of $2,923.14 and administration costs up to $14,500.

### iii. Class Representative Contribution Award

Plaintiff requests a service award of $10,000, which Defendants do not oppose. At the outset, the Court notes that a service award of $10,000 has been approved in nearly identical cases. *See Brandenburg II*, 2019 WL 6310376, at *8; *Arledge*, 2018 WL 5023950 at *6; *Mullins*, 2019 WL 275711 at *6; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, at Doc. 52 (N.D. Ohio May 17, 2019); *Arp*, 2020 U.S. Dist. LEXIS 207512, *24.

The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, —— U.S. ——, 138 S. Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit.

As Class Counsel advocated at the Fairness Hearing, important rights, including those implicated by wage and hour laws, would go without vindication but for the efforts of the class representative. While this case presents a somewhat unique situation involving the estate of a former worker serving in the role as class representative, Ms. Kacey McConnell, on behalf of her deceased father, served the role admirably. Ms. McConnell served the interests of the entire class of delivery drivers and her efforts resulted in each of them receiving a significant settlement of the claims raised in this case.

The Court finds that only through Ms. McConnell's efforts did a large group of low-wage workers receive a substantial award. The Court finds that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers.

Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000.

## IV. Conclusion

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval is **GRANTED**.

The parties shall notify the Court once the final settlement payment is made, at which time the Court will dismiss this action with prejudice, without costs to any of the parties against the others. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

IT IS SO ORDERED, this 24th day of may, 2021.

Walter H. Rice, United States District Judge